UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

RICKY NICHOLS                                CIVIL ACTION NO. 3:10-cv-1660
    LA. DOC #485269
VS.                                          SECTION P

                                          JUDGE DONALD E. WALTER

JOEL WILLIAMS, ET AL.                        MAGISTRATE JUDGE KAREN L. HAYES

REPORT AND RECOMMENDATION

*Pro se* plaintiff Ricky Nichols, proceeding *in forma pauperis*, filed the instant civil rights complaint on October 25, 2010. When he filed this complaint, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections; he was incarcerated at the David Wade Corrections Center (DWCC), Homer, Louisiana and he complained that he was exposed to unhealthy conditions of confinement and denied adequate medical treatment at that institution during the month of July 2010.  Plaintiff sued various corrections officials and members of the DWCC nursing staff requesting compensatory and punitive damages.  In December 2010 plaintiff was released from custody and is now residing in Monroe, Louisiana.

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

*1. Original Complaint [Doc. #1]*

Plaintiff, while still incarcerated, filed the instant complaint on October 25, 2010.  He alleged that he  was an LDOC inmate at the DWCC during the month of July 2010.  During that

month, plaintiff complained that the extreme heat and humidity aggravated his migraine headaches and he requested an examination by a physician. Nurse Joel Williams and Nurse Bill Martin denied his requests. Plaintiff asked the administrative staff – Angie Huff, Jerry Goodwin, Pam Austin, Michelle Dauzat, and Debbie Scriber – for assistance and none of them responded until plaintiff submitted a grievance to "Internal Affairs" in Baton Rouge. Plaintiff complained that he was given inadequate medical treatment and that his rights under the Americans with Disabilities Act were violated.

### 2. Amend Order [Doc. #5]

While the matter was on initial review, plaintiff was released from custody and, on December 21, 2010, he notified the court of his current residential address. On February 15, 2011, plaintiff was directed to amend his complaint to provide additional information. Plaintiff was directed to provide, (1) the name(s) of each person who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or what each defendant did to violate plaintiff's rights; (3) the place and date(s) that each event occurred; and (4) a description of the alleged injury sustained as a result of the alleged violation.

Plaintiff was also directed to describe the nature of his ailment and the type of treatment he maintains would have been proper and to describe the injury he sustained as a result of the denial of care. [Doc. #5]

### 3. Amended Complaint and Exhibits [Doc. #6]

On March 11, 2011, plaintiff submitted an amended complaint and various exhibits. Plaintiff alleged that defendant Joel Williams, the nurse assigned to plaintiff's dorm, denied plaintiff's request for "eye medicine" on July 7, 2010. Plaintiff conceded, however, that he was examined by Dr. Fuller on July 13, 2010. Williams denied plaintiff's "sick call" on July 19, 2010, and, with regard to

plaintiff's complaints about the heat, he advised plaintiff to get used to the heat. Finally, Williams

denied plaintiff's "sick call" and his "cry for help" on August 3, 2010.

Plaintiff alleged that defendant Bill Martin was also a nurse assigned to plaintiff's tier.

According to plaintiff, Martin denied plaintiff medical attention on July 17 and 23, 2010, and

"another time in July..." as well.

Plaintiff alleged that Assistant Warden and Assistant Medical Director Angie Huff ignored

plaintiff's July 18, 2010, plea for help.

Plaintiff complained that Warden Jerry Goodwin ignored plaintiff's requests for help on

many occasions but specifically on July 23, 25, and 28, 2010.  He acknowledged that Goodwin did

respond eventually, but only after plaintiff complained to the LDOC Internal Affairs office.

Plaintiff alleged that Assistant Warden Michelle Dauzat ignored plaintiff's letters on July 19th

and 23rd of 2010. According to plaintiff, despite his plea to see a physician he was not afforded

treatment until August 12, 2010.

Plaintiff alleged that Medical Director Debbie Scriber ignored plaintiff's request and denied

plaintiff's Grievances in July and August, 2010.

Plaintiff described the injury that resulted from the defendants' constitutional violations as

follows:

> The current status of my injury/damage to my migraines and eyes is very chronic. To best describe my pain now (as a result of the medical neglect and extreme heat) ... is that I can't seem to find comfort/relief from my eyes and migraines any longer. Prior to my incarceration [at DWCC] with proper medications and rest, I could find relief and be able to function properly. Currently I have pain and anxiety like never before. DWCC's neglect was very detrimental to my already existing pain from an MVA. My eyes burn and throb with pain like never before, and the migraine headaches become so severed (like never before) that I can't sleep, eat, I vomit a lot and remain in constant pain. The med's that once worked before don't seem to budge/work. I feel very violated and can't fulfill the goals that I would love to. As a result of DWCC's neglect (medical) I have been referred to pain management, am scheduled for eye

surgery and have to visit emergency rooms regularly and a neurologist. [Doc. #6, p. 6]

Plaintiff also supplied documentary evidence in support of his complaints. These documents reflect the following chronology of events:

1. On July 7, 2010, plaintiff submitted a Health Care Request Form requesting a prescription for eye drops for plaintiff's allergies. According to the request, the irritation aggravated his migraine head aches. [Doc. #6, p. 30]

2. In an Administrative Remedy Procedure (ARP) Grievance submitted on some unspecified date, plaintiff complained that on July 15, 2010, he requested a "Doctor visit" to Nurse Joel Williams for chronic migraine condition that was aggravated by the extreme heat and humidity. Plaintiff objected to Williams denial and to his "unprofessional response which was 'Well you had better get used to the heat...'" On October 5, 2010, the ARP was rejected as duplicative. [*Id*., p. 15]

3. On July 16, 2010, plaintiff wrote a letter to Mrs. Hearne requesting "... clemency, Risk-Review, Medical Parole, or movement to a cooler environment..." According to the letter, plaintiff was in lock down as a result of having been found guilty at a disciplinary hearing of possessing contraband, including a cell phone. Plaintiff maintained his innocence and complained of the excessive heat and humidity in the lock down cells. Plaintiff further explained that his migraines were the result of an "M.V.A." and a stroke that he suffered in 1991. He explained that the migraines became so severe that a cranioplasty was performed in 2005; however, the migraines progressed to such a degree that he lost his job and was declared disabled. Plaintiff further explained that he did not experience such problems when he was confined in an air conditioned dormitory. [*Id*., pp. 42-43]

4. On July 18, 2010, plaintiff submitted an "Emergency Administrative Remedy Procedure" in which he complained that he was advised by a corrections officer that plaintiff's prescription drug

Neurontin was in short supply. Plaintiff again complained of the heat and humidity. [*Id*., p. 41]

5. On the same date plaintiff corresponded with Mrs. Angie Huff, the Deputy Warden. He informed her of his disciplinary conviction, his medical condition, and the prison's failure to maintain an adequate supply of the seizure medication, Neurontin. He requested her assistance in obtaining a medical pardon or clemency. [*Id*., pp. 38-39]

6. On July 20, 2010, plaintiff corresponded with Mrs. Austin, the Nursing Director. He complained that his July 17, 2010, sick call and request to be examined by a physician had been ignored. He also complained that his July 19th request to the Medical Director concerning the heat and humidity and his medication was not handled appropriately. He alleged that the medical director laughed at him and advised him to get used to the heat, and further advised that he would be provided his current medication along with Tylenol for pain. [*Id*., p. 37]

7. On July 21, 2010, plaintiff corresponded with an attorney, Mr. Salomon. Plaintiff again complained of severe migraines "... associated with the 'extreme' humidity and heat inside this 6' x 8' [extended lock down] cell block..." He complained that his numerous ARPs, Emergency ARPs, and requests for assistance to prison staff had been ignored. He specifically complained that his request for medication for his eye allergies had been denied. He asked Salomon for assistance. [*Id*., p. 28]

8. On July 23, 2010, he submitted a Health Care Request Form complaining again about the effect the extreme heat and humidity was having on his migraine headaches. [*Id*. ,p. 31]

9. On July 25, 2010, he submitted another Health Care Request Form complaining of migraine pain. [*Id*., p. 32]

10. On July 29, 2010, Tommy Garrett, Executive Staff Officer, advised plaintiff that his request for administrative remedy which was received on July 28, 2010, would be logged into the

system and assigned ARP-DWCC-10-0841. Plaintiff was also advised that the ARP would not be handled until all previously accepted requests were completed at the institutional or headquarters level. [*Id*., p. 44]

11. On July 29, 2010, plaintiff received a response to his July 13, 2010, ARP. In the response, authored by Angie Huff, it was noted, "On 7-13-10, you were seen by Dr. Fuller for your allergies and reported problem with your eye. He noted very little if any irritation in your conjuctiva. He ordered no medication for your eyes at this time. He is in the best position to make adjustments in your plan of care. If you feel that you need additional evaluation or have a significant change in your symptoms, you should make sick call and discuss the problem with the nurse."   On July 31, 2010, plaintiff objected to the ARP noting, "As I stated to Dr. Fuller, my eyes are very irritated and [aggravate] my migraines for 3 to 4 hours after I wake up."[*Id*., p. 40]

12. On July 30, 2010, plaintiff again wrote a letter to Mr. Salomon.  Plaintiff enclosed copies of two previous sick calls requesting medical attention and requested Salomon's assistance in being transferred to the OCC (Ouachita Corrections Center) or in obtaining a medical furlough. [*Id*., p. 29]

13. On August 3, 2010, plaintiff submitted another Health Care Request Form complaining of extreme migraines due to a lack of medication. [*Id*., p. 34]

14. On August 3, 2010, Tommy Garrett, Executive Staff Officer advised plaintiff that his request for administrative remedy which was received on August 2, 2010, would be logged into the system and assigned ARP-DWCC-10-0881. Plaintiff was also advised that the ARP would not be handled until all previously accepted requests were completed at the institutional or headquarters level. [*Id*., p. 45]

15. On August 4, 2010, Captain Gene Caviness of the OCC (Ouachita Corrections Center) corresponded to plaintiff and advised that the Warden was opposed to plaintiff's transfer from

DWCC to OCC. [*Id.*, p. 21]

16. On August 12, 2010, plaintiff submitted another Health Care Request Form. [*Id.*, p. 35]

17. In a letter dated August 12, 2010, DWCC Warden Jerry Goodwin wrote the following

to plaintiff:

> You arrived at DWCC on 6/28/2010. You were seen upon intake by the nurse for routine intra-institutional health screening. It was noted in your medical record that you have a history of migraine headaches and seizures. Your medications which you were taking upon transfer were written for the physician to review along with the information from the health screening. Your were issued a restricted duty status which limits your lifting, pushing, pulling, squatting and bending. Your are limited to working at ground level with no sharp tools and were to be assigned a bottom bunk. Your medications were continued upon intake. You were scheduled for a physician's evaluation on July 2, 2010, (five days after your arrival at DWCC). Your chronic problems were noted at this evaluation and your medications were re-ordered which included Celexa, Cozarr, Ibuprofen, and Neurontin. You have once recorded sick call at 7/7/2010 and Dr. Fuller saw you for your complaints on 7/13/2010. Your record has been reviewed by the physician that is in charge of prescribing your plan of care. He is in the best position to determine changes in your condition/or any increase in symptoms through routine sick call. If you feel that you have significant information that you would like to have forwarded to DWCC for review, you should contact the physician that treated you and have your records sent to the medical department. You will continue to be followed as necessary. [*Id.*, p. 25]

18. On August 23, 2010, Warden Goodwin denied plaintiff's request for a medical furlough

noting, "You were evaluated by the doctors at DWCC on 7-2-10, 7-13-10, 8-12-10, and 8-16-10.

There has been no indication that you are eligible for a medical furlough. A recommendation for a

medical furlough must come from a physician. The physicians and medical staff will continue to

follow you as necessary for your medical complaints." [*Id.*, p. 26]

19. On August 23, 2010, plaintiff wrote to Ms. Scriber, a member of the DWCC medical

department. He provided a brief medical history and requested that Ms. Scriber obtain copies of

plaintiff's medical records from his treating physician. Plaintiff again complained that the heat and

humidity aggravated his migraines. [*Id.*, p. 16]

20. On August 23, 2010, plaintiff also wrote a letter to "Sherry and family" in which he complained that "[i]to took me over 6 weeks to get in to see the Dr., Ms. Pam Hearn, after numerous sick calls, letters, and complaints." He also complained that there was no air conditioning and that he was experiencing severe migraines. He asked the recipient to obtain his medical records and provide them to the medical department. [*Id.*, pp. 17-18]

21. On September 17, 2010, Angie Huff responded to plaintiff's ARP No. 2010-0837 as follows:

> Your medication is given and re-ordered as it is prescribed. Medication comes from an offsite pharmacy and there are specific time periods which are permitted for re-orders. A refill was requested on your Neurontin and it was refilled on 7-19-10. Medication was not administered to you at the second pill call on 7-18-10 because it had not returned from Pharmacorr. The officer acted appropriately to notify medical and a stock dose of your medication was issued until your prescription refill returned. It is our concern that you receive your medication as ordered and your medical record indicates that you have been receiving it on a consistent basis. Your medical needs have been forwarded to physicians for review and they are in the best position to determine your plan of care. You were seen by the physician following referral from the nurse on 7-2-10, 7-13-10, 8-12-10, 8-16-10, and 8-27-10. [*Id.*, pp. 22-23]

22. On October 5, 2010, Executive Staff Officer Tommy Garrett advised plaintiff that as of that date he had four ARPs in the system. [*Id.*, p. 20]

23. On October 11, 2010, plaintiff submitted another ARP as "... a continuance from ARP 2010-0838." Plaintiff complained that on October 7, 2010, Lt. John Huey failed to timely re-order plaintiff's prescription for Neurontin and allowed the supply to "run out." On October 8, Sgt. Danby and the Medical Staff made an extra effort to provide plaintiff his medication. Then on October 11, Lt. Huey did not provide plaintiff with his dose of Neurontin and ignored plaintiff's complaint. This ARP was rejected as duplicative. [*Id.*, p. 19]

24. On October 20, 2010, Ms. Huff responded to ARP No. 2010-0838 as follows:

You have been evaluated numerous times by the physicians at DWCC. Upon your transfer on 7-2-10, you were seen for evaluation of your medications and ... medical history. The plan was to continue your current medications. On 7-13-10 you were seen once again by the doctor for your complaint of allergies. There were no changes in your plan of care. On 8-12-10, you were again scheduled for the doctor for review of your complaint of headaches. Your examination was essentially negative and the doctor adjusted the timing of your medication to assist with your complaint of headaches. You were seen again on 8-16-10 for a complaint of a problem with your right eye. The doctor ordered artificial tears to assist you with your complaints. It was noted that you had a small ptyregium on your right eye. Again the doctor evaluated you for your complaint of headaches on 8-27-10. He noted that there was no need to obtain any old medical records. He did increase the strength and frequency of Ibuprofen for your complaints. It is noted that on 9-19-10, you were placed on callout for chronic clinic evaluation of your hypertension. You refused to be evaluated for hypertension. A review of your medical record indicates that there have been responses to your letters and requests for Warden intervention on the following dates: 7-27-10 from the Warden's Office, on 7-27-10 from Paula Milwee, on 8-16-10 from the Warden's office, and on 8-23-10 from Debbie Scriber. Your physicians have evaluated you and have prescribed a plan of care for you. They are in the best position to determine the need for further evaluation or an adjustment in your plan of care. You will continue to be followed as necessary and you are encouraged to comply with the plan designed to monitor your health. [*Id.*, p. 7]

25. As noted above, plaintiff signed his complaint on October 20, 2010; it was received and filed on October 25, 2010. [Doc. #1]

26. On October 27, 2010, Warden Goodwin responded to another of plaintiff's complaint concerning the ordering of medication. The warden explained that advance ordering is now required and he promised to impress this fact on the appropriate members of his staff. [Doc. #6, p. 27]

27. On November 22, 2010, the LDOC Secretary rejected plaintiff's appeal of ARP No. 2010-0838 noting, "Your statement has been considered as well as your medical records. The medical staff is well aware of your medical condition and as adequate information upon which to base a determination of your medical concerns and the treatment necessary. Medical opinion is controlling. The medical care you have received and will continue to receive is deemed adequate..." [*Id.*, p. 24]

28. Plaintiff was released from custody in December 2010. [Doc. #4]

29. On January 1 and 19 and February 12 and 22, and March 7, 2011, plaintiff was examined at the St. Francis North Hospital in Monroe. He was diagnosed with "recurrent migraine headache" or "migraine headache"  and provided patient education materials on each date. On one occasion plaintiff was instructed to follow up with his primary care physician. [Doc. #6, pp. 10-14] On January 3, 2011, he was prescribed Celexa, Neurontin, Losortan, Motrin, Lunesta, and Prednisone.[1]

---

[1] Celexa® or citalopram is used to treat depression. Citalopram is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs). It works by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance.

Neurontin® or gabapentin is used to help control certain types of seizures in patients who have epilepsy.  Gabapentin is in a class of medications called anticonvulsants. Gabapentin treats seizures by decreasing abnormal excitement in the brain.

Losartan is used alone or in combination with other medications to treat high blood pressure. This medication is also used to treat kidney disease in people who have type 2 diabetes and high blood pressure. Losartan is in a class of medications called angiotensin II receptor antagonists. It works by blocking the action of certain natural substances that tighten the blood vessels, allowing the blood to flow smoothly and the heart to pump more efficiently.

Motrin® or prescription ibuprofen is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). It is also used to relieve mild to moderate pain, including menstrual pain (pain that happens before or during a menstrual period). Nonprescription ibuprofen is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. Ibuprofen is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation.

Lunesta® or eszopiclone is used to treat insomnia (difficulty falling asleep or staying asleep). Eszopiclone is in a class of medications called hypnotics. It works by slowing activity in the brain to allow sleep.

Prednisone® is used alone or with other medications to treat the symptoms of low corticosteroid levels (lack of certain substances that are usually produced by the body and are needed for normal body functioning). Prednisone is also used to treat other conditions in patients with normal corticosteroid levels. These conditions include certain types of arthritis; severe allergic reactions; multiple sclerosis (a disease in which the nerves do not function properly); lupus (a

*[Id., p. 8]*

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad

---

disease in which the body attacks many of its own organs); and certain conditions that affect the lungs, skin, eyes, kidneys blood, thyroid, stomach, and intestines. Prednisone is also sometimes used to treat the symptoms of certain types of cancer. Prednisone is in a class of medications called corticosteroids. It works to treat patients with low levels of corticosteroids by replacing steroids that are normally produced naturally by the body. It works to treat other conditions by reducing swelling and redness and by changing the way the immune system works.

Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health (NIH), Drugs & Supplements, http://www.nlm.nih.gov/medlineplus/druginformation.html

discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint set forth his claim and the basis for his cause of action; he was instructed to amend his complaint to provide more specific factual support for his claims. He  filed an amended  complaint as instructed and submitted copies of documentary evidence which  provide additional details and facts needed to resolve his claim.  He need not be permitted further amendment because his allegations  – taken as true for the purposes of this report –   fail to state a claim for which relief may be granted.

## 2. Medical Care/Conditions of Confinement

Plaintiff is a convict who complains that he  was  exposed to unhealthy conditions of confinement which triggered the onset of migraine headaches and, that thereafter he was denied prompt and appropriate medical care by health care professionals and corrections officials while he

was incarcerated at DWCC during the summer of 2010.

The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment.

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). While the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999). "For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  Plaintiff has described the conditions of confinement as hot and humid, conditions which are neither cruel and unusual with regard to institutions located in Louisiana.

Likewise, plaintiff's complaint that he was denied prompt and appropriate medical care are refuted by the record he has submitted in support of his complaint.  Rights such as the right to prompt and appropriate medical care, which also arise under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm*.  Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50

L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings, when read in light of the exhibits he tendered with his amended complaint,  fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.  As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the diagnoses and courses of treatment that were recommended by the physicians who examined him on July 2, 2010, (five days after he arrived at DWCC), July 13, 2010, when he was examined by Dr. Fuller after complaining of allergies, August 12, 2010, when plaintiff complained of migraine head aches (the examination was essentially negative and the physician adjusted the timing of plaintiff's medication), August 16, 2010, when plaintiff complained of problems with his eye and the physician prescribed artificial tears, and, August 27, 2010, when plaintiff was again examined based upon his complaint of migraines (the physician saw no need to order prior medical records and instead ordered an increase in the strength and frequency of plaintiff's pain medication, ibuprofen). Further, when plaintiff was scheduled to be examined by a physician for hypertension on September 19, 2010, he apparently refused the evaluation. [See ¶24, *supra*]

Plaintiff's disagreement with the diagnosis and course of treatment that was ultimately

provided to him at DWCC during the months of July and August 2010 falls far short of establishing

deliberate indifference since mere disagreement with medical diagnosis or treatment cannot state a

claim for relief under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th

Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d

179, 181 (5th Cir.1985).

Further, while it appears that while plaintiff was not given his prescribed Neurontin on two

occasions, those circumstances clearly arose due to the negligence of the corrections officers who

failed to timely re-order his prescription, and does not appear to have resulted from the deliberate

indifference of any of the named defendants.  Deliberate indifference is not the equivalent of

negligence; deliberate indifference "describes a state of mind more blameworthy than negligence."

*Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the

deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial

risk; they must have actual knowledge of the risk and must thereafter have ignored it.  In other

words, a civil rights  plaintiff must allege and prove that each of the  defendants knew of and then

disregarded an excessive risk of injury to him, and,  that they were both aware of the facts from

which the inference could be drawn that a substantial risk of serious harm existed, and that they drew

that inference. *Id.* at 837.  Put yet another way, under the  standard of deliberate indifference,

evidence of unsuccessful medical treatment, negligence, neglect, or even gross medical malpractice

is insufficient to state a claim under Section 1983. *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th

Cir.2006); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); *see also Stewart v. Murphy*, 174

F.3d 530, 534 (5th Cir.1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise

to the level of a constitutional violation, malpractice or negligent care does not."); *Graves v.*

*Hampton*, 1 F.3d 315, 319 (5th Cir.1993) ("It is firmly established that negligent or mistaken medical

treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action.").

In short,  "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346. For that reason, mere disagreement with medical diagnosis and treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *Id.* Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir.1999). Federal constitutional protections are not violated merely because an inmate's medical treatment was unsuccessful or because a condition persisted despite treatment. *Gobert*, 463 F.3d at 346.

Plaintiff was not the victim of deliberate indifference with regard to the conditions of confinement or the medical care he received while incarcerated at DWCC. He has failed to state a claim for which relief may be granted and his complaint should therefore be dismissed.

### *Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed**

legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, April 26, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE